Your Honor, the second case is Paul 209-577, Janet Bell, individually, and is special administrator of the estate of Daniels Bell v. Hutsell. On behalf of the F.O.R., Mr. Jeffrey Deutschman. On behalf of the F.O.A., Mr. John W. Atkins, Jr. Good morning, counsel. Mr. Deutschman. Good morning. May it please the Court, Honorable Justices, counsel. My name is Jeff Deutschman and I represent Janet Bell, the special administrator of the estate of her deceased son, Daniel Bell. Her case was dismissed by Judge Hall on a 2615 motion to dismiss. We are asking this Court to find that the complaint stated a cause of action against the parents who were at home, engaged in what was happening in their home, promising to ensure that no underage drinking and driving would take place, but ultimately doing nothing despite this voluntary undertaking. We contend that the complaint stated sufficient facts to set forth the cause of action for voluntary undertaking. Moreover, as set out in our pleadings, that we believe the complaint sufficiently stated an implied private cause of action against the defendants for violation of section 5-6-16 of the Liquor Control Act. Counsel, weren't the Hutzels social hosts and therefore insulated from liability under the law of the state of Illinois? They were not social hosts, Judge. Why not? This was not their party. This was their party that their son had. They made it very clear to their son before the party that he was not to have any alcoholic beverages present, that he was – that no one was to drink and drive. And despite all the – they didn't – and moreover, and most importantly, they did not serve alcohol. However, they sat down – So you're saying they actually had to themselves serve alcohol to the guests, they had to furnish it in order to be social hosts? I think that that's part of the analysis. They did not serve alcohol. They did not allow the guests to drink their alcohol. Instead, they patently watched alcohol being brought into their homes, watched children under the age of 21 drinking the alcohol when they knew all these children were from Deerfield High School, and allowed that drinking to take place. So – Go ahead. Well, is there a legal definition of social host that you're relying on? No, Judge. Instead, what we're relying on is all of the aspects of how this law is broadening. The legislature is amending the laws to increase liability. The court system in the Supreme Court of Illinois is – set out in the Wacolooge case is fashioning other ways of cause of action to handle situations like this. And the public is clamoring for some way of stopping these kind of attempts by cool parents to just ignore the law and ignore their responsibility to the children that are in the homes. There may be some public policy reasons for which you're advocating, and I think we can understand that. But just to clarify the point that was alluded to earlier, can you be a social host if you do not supply or provide alcohol? I think that you can. But if you're a social host, then the liability would not attach against social hosts for serving alcohol and beverages to minors, correct? That's correct. This is not a case of social hosts. So the cause of action has to be based on something other than the social host, correct? That's correct. And that would be what? Well, there is no allegations in our complaint that the defendants were social hosts. There's nothing indicating that they served alcohol. There's nothing indicating that this was their party. There's got to be some basis for making them social hosts. And we don't cite any facts that would make them social hosts. Well, what about the allegations in paragraphs or counts 4, 5, and 6 of the complaint that the Hutzels knowingly authorized, enabled, and permitted the partygoers to possess, distribute, and consume alcoholic beverages? Isn't that such an allegation, and isn't that inconsistent with the allegations you've just been referring to in counts 1, 2, and 3? No, we don't believe that's the case. Instead, we believe that those facts set out, as you just read them, indicate that those show the allegations sufficient to plead that the defendant's actions increase the risk of harm to the partygoers that they perform negligently. They said we're not allowing any kind of alcohol. We are not – we don't want anybody to ensure. We're going to monitor and inspect what goes on here, and they did. And, in fact, not only did they do that, but the facts of this case are so egregious that Mr. Hutzel and Mrs. Hutzel were criminally prosecuted. He spent time in jail. This goes over and above just what counsel for the defense wants to say is a social host case. This is a voluntary undertaking and the negligent performance of that undertaking. We've heard of parties where mom and dad are gone and the children have no – and the children know that and mom and dad have no knowledge. What part here is the voluntary undertaking, that they gave permission for the event to occur without alcohol or that they then supervised the event and saw the alcohol? Where is the voluntary undertaking? These parents did not just lock themselves in the room and were oblivious to what was going on, not at all. They made sure to tell their child that he was not to have any alcoholic beverages in the house. They made sure that they were – that they told their son that no one was to drink and drive and that they were going to ensure all of this by monitoring and inspecting to make sure that was the case. What they did was they opened up all their garage doors. They opened up all the doors of their house. They turned on all the lights so they could see what was going on and they walked around the house. Mr. Hutzel went into the basement and spoke with people, telling them not to drink and drive, but plainly smelling the strong sense of odor, plainly seeing what later was found by the Deerfield police to be many large garbage bags filled with alcohol bottles. Beer bottles. He watched these people drinking. He knew all of them were under the age of 21. He knew that when these people were drinking, they were going to be driving home. Mr. Bell was parked in his driveway. He watched him drinking. He had conversations with him. He could tell that people were becoming inebriated. And instead of doing something about it, after indicating that he was going to do something about it, he did nothing. And in that, we believe that our complaint showed with those facts that he voluntarily undertook the duty to not have any of this kind of behavior and then negligently performed that. What would he undertake to perform that duty for? He referenced a conversation with his son under the voluntary undertaking theory of liability here. That's one who undertakes gratuitously to render services to another and then fails to exercise reasonable care in performing the undertaking. So was there some representation to any third parties or their parents that they were going to take this voluntary undertaking? So I want to see how the duty runs to the third party. I understand that. And Mr. Hussle, and we've said this in our allegations in the complaint, he said to the people in the basement that he was having these children that he was having conversations with about Internet gambling and the like, sports. He said, I do not want you drinking and driving. You are not to leave the premises if you're drinking any alcohol or beverages. Almost with blinders on, knowing that they're drinking and knowing that people are coming in and out of the house, watching people carrying boxes filled with liquor, boxes filled with liquor and beer into the house, drinking in various rooms inside and outside the house. You know, he knew what was going on. He had conversations with various people, including possibly my client. But now where the Supreme Court in the Charles B. Siegfried case says that the legislature has preempted the field of alcohol-related liability, doesn't it mean that they're talking about all alcohol-related liability and wouldn't that encompass this situation? And if not, why not? I don't think so. I think that the Illinois Supreme Court in Montgomery clarified that issue. And the later case of Rice extended the voluntary undertaking cause of action in a situation where there was a party and alcohol and the use of a handgun. And the mother in that case said there was going to be no handguns involved and later was held to have violated, negligently violated that duty that she undertook at that particular alcohol-related party. I think that the Charles case has been overturned by the Wacowich case. Counsel, you may have the argument that the voluntary undertaking theory is a way of circumventing the rule against social host liability. How do you respond to that argument in this case? Can you repeat that? Yeah. Does the voluntary undertaking theory, is that a way of circumventing the rule against social host liability in this case? It's not. That's the argument that the defense has, but that's not what's going on here. There's no attempt to circumvent anything. Instead, it's an application of the cause of action that was set out by the Supreme Court in Wacowich. In the Wacowich case, the court there said this is not circumventing social host liability. The Supreme Court itself said that's not what is intended here. Voluntary undertaking does not do that. Now, Wacowich did not, the parents' supplier, provide the alcohol. I believe that's true. Is it not a distinguishing feature between that case and this case? I think that it does not matter. The fact is the undertaking in that particular case was even, in some aspects, less gratuitous than in this case. They took charge in the Wacowich case. They moved the girl to another room. They removed her vomit-stained blouse. They put her head under a pillow. These are the kind of things that they did in setting up their voluntary undertaking. In our case, you have way more than that, way more. They knew that partying was going on. They said they didn't want it to happen. They allowed it to happen. They almost endorsed it by their presence there. Despite the fact that they had indicated that there was going to be no alcohol with beverages. You know, their son, as planned in the complaint, their son had been arrested twice for alcohol-related incidents. Their house was known all over the Deerfield community as the party house. This is the place where kids could go to have a freewheeling party, drink, do drugs, whatever they wanted to do. That was how this house was known, and that's all set out in our complaint. In Wacowich, there are two scenarios almost. The drinking, you know, the taunting her to drink. Then she becomes ill, which is an intervening cause, as it were. And then there's caretaking. That is pretty easy to line up so that there is no circumventing of the social host doctrine. How, though, based upon your argument here today, how can we segregate the party from where the alcohol is being consumed from the voluntary undertaking? Well, I think that's exactly what Judge Hall did, is he segregated way too tightly. There is no doubt that the facts of Mr. Bell's situation here and his death are not exactly like the Wacowich case. They're not, all right? But the Wacowich case was an effort by the Illinois Supreme Court to extend the law beyond social host to a voluntary undertaking, if that is what was done. And later cases, like the Rice case, not only, you know, extend, they don't extend, but they show that there are other causes of action that can take place besides the exact facts of Wacowich and still have a voluntary undertaking and the negligent performance of that undertaking. Now, counsel, isn't it either illogical or even maybe just anomalous to say that under Illinois law, parents who actually serve liquor to minors in their home are actually less liable or insulated from liability, less liable than parents who try to ensure that no liquor is consumed? And you know what? I agree with you. I think that that's absolutely what may be going on here with the state of the law. And that's why there's been efforts by the legislature to do something about it, by the Illinois Supreme Court, to extend something to these kinds of facts and causes of action. There has got to be a way to prevent parents from acting like this. And the law is living and breathing. It must expand to these kinds of situations. And the Wacowich case allows it to do that. You make a very good point, I think, and a compelling logical point. But is this not something for the legislature to recognize? The legislature has recognized it. They recognized it in the Liquor Control Act. I mean, that act sets out that it is unlawful. The Liquor Control Act would impose a criminal penalty on the parents, wouldn't it? And our argument is that there is nothing in that act that prevents them from extending this in a civil capacity. Let me ask you one final question to clarify the voluntary undertaking theory of liability. In a case where parents allow children, minors, to come and go from the house where alcohol has been served, but they say nothing and they do nothing, you've alleged here that there were facts that the father was present, observed alcohol being consumed. What about a case where minors are drinking in a home, the parents are home, but they say nothing, they do nothing, they turn a blind eye to this? Would there be any liability there for the parents under your theory of liability? I think not in a voluntary undertaking situation. There would be no facts that I would be aware of under the scenario that you put forth that would show that somehow they undertook some kind of a duty and failed in that performance of that duty and allowed the increased risk of harm to others who were at the party. So based on the limited amount of facts that you just gave, I think not. However, I believe those people would be criminally prosecuted today. I believe they should be criminally prosecuted today. I've got a couple of high school kids myself, and I'm telling you, they should be prosecuted. And as a plaintiff's personal injury lawyer, I'm going to sue them if I get that case. And I'm going to try as hard as I can to extend a private right of action under the Liquor Control Act because that is what would cover this situation. And it's been extended by the legislature to allow it to do that. And I believe that this court should – I know that my time's up. Well, you'll have some time, but Justice Hutchinson has a question first. This relates to the Liquor Control Act. And you said there's nothing that prevents this from being used for a private cause of action, this particular statutory authority. Well, isn't the fact that the legislature made it a class A misdemeanor, doesn't that constitute a prevention of extension of this? Because they have a specific purpose in mind for this statutory authority. And had they wanted to extend it or say something beyond, they could have done so. They could have done so. But it doesn't mean that by making it have some kind of a penalty under the criminal part of the aspect of the statute that it bars any kind of civil kind of a remedy. And, in fact, there have been many other statutes, and I've set them forth in my brief, that where a criminal aspect of a case is – of a statute exists and civil liability is extended. But by the same token, there are probably just as many where criminal liability or some sort of strict liability that causes a criminal offense have not been extended to civil causes of action. Well, under the Rogers v. St. Mary's Hospital four-factor test, we've laid out how Daniel Bell was 18 years of age and clearly a member of a class who would benefit under that section of the Liquor Control Act. It was enacted to protect him, allowing a private right of action under the facts of this case is consistent with the underlying purpose of the Liquor Control Act, which is to keep alcohol out of the hands of underage persons, including Daniel Bell. The fatal injuries suffered by him were, under the Act, designed to prevent those kinds of injuries. There is nothing in the statute whatsoever that prevents it from being – indicating that the legislature somehow intended to limit the remedies available under the Liquor Control Act. And, in fact, the facts of this case are almost set out in the Liquor Control Act, Section A1, almost word for word. Counsel, you'll have time for rebuttal. Thank you very much, Your Honor. Mr. Patton. Good morning, Justices. Good morning. This is one of those areas that they recognize themselves when we're talking about social hosts and alcohol-related causes of action. You have nothing before you by the appellants, a statute, a case that in any way allows this body to overrule Charles Rewakilich. Well, let's just explore that for a second. I mean, Charles, clearly the Supreme Court was asked to recognize a cause of action against social hosts for serving alcoholic beverages to minors, and the Court held that the field was resumed or was controlled by legislative enactment, so the social host would not be responsible. The question I have is, is the voluntary undertaking theory of liability predicated upon somebody being a social host? Yes. Why is that? Because they have decided that anybody that is a host, and the words social host are not necessary to be pled in a complaint for Charles Rewakilich to apply. But the fact patterns for these cases, the Dram Shop Act and the subsequent Illinois Alcohol Responsibility Act, are very clear. We're talking about non-Dram Shop, residential homes where the owner of the home or whoever controls the home has alcohol being served to minors. But I think the issues are separate, and how do you explain this passage from Rewakilich where the Supreme Court stated, indeed, it is irrelevant for purposes of plaintiff's voluntary undertaking counts whether defendants were acting as social hosts and supplying the alcohol? So I think the voluntary undertaking theory does not have to rest upon the defendants being social hosts, does it? Well, I'm trying to follow your question here. The voluntary undertaking as pled in this complaint is based upon alcohol being served at a home. And the Hustles voluntarily undertaking a task of monitoring the party and trying to make sure that minors would not be consuming alcohol. But the Hustles didn't supply or provide any alcohol. They didn't. So they don't fall within the classic definition of social hosts, do they? Yes, they do. Absolutely. And why do they? Well, if you're defining social hosts as being contingent upon the actual serving of the alcohol to the minors, then you're creating, frankly, a ridiculous situation for this law to apply. Because under those circumstances, the parents would simply say, come on in, bring all the booze that you want, but we just want to make it clear we're not serving it. We're not buying it. We're not making it available. You make it available. And by those words alone, then they can never be held responsible as a social host. Well, social host has a legal meaning, and it stems from an early Supreme Court case in which they defined the social host as a noncommercial supplier of liquor. Social host is somebody who either provides, according to this, or supplies liquor. If that's not the case, what are you describing as a social host? A social host, I believe, as the cases would certainly define them, to be anybody that is responsible for a residential home where drinking by minors is taking place. The whole point that got this case law, that got the Charles decision and the Wachlich decision on the books, was because for a century the courts were looking at the serving of alcohol to adults and minors, the actual serving of the alcohol, as being too remote to be a proximate cause of a subsequent injury by the individual that was intoxicated. So if that is the rationale, and that is the rationale by the Charles and the Wachlich courts, then wouldn't it be more remote? Wouldn't it pull back even more on proximate causation if the individuals sued did not supply the alcohol to the party that eventually caused an accident? So if somebody is having a party at their house, minors are drinking, you're saying under no circumstances can the parents who are permitting the party be home responsible? Is that your argument? Well, my argument is based upon Charles and Wachlich. But is that your argument? If it's alcohol related, then it comes within the area that's been preempted by the legislature, is that right? That's correct. If it's alcohol related. If it's alcohol related. All right. So you're saying if one set of parents calls up another set of parents or a number of parents and saying that we're going to have a party at our house and there's concern expressed as to whether or not there's going to be underage drinking, and the parents who are hosting the party say we will ensure that no minors are drinking on our premises, if it turns out that there is drinking in somebody who's injured under your scenario, those parents could never be held civilly responsible. That's correct. You're saying there's no duty. There's no duty. So we're leaving the issue of proximate cause aside. No duty. Based on the Charles case and the Gramsci-Baptist, is that what you're saying? And the Wachlich decision, which asks the very questions, Justice Hudson, that you're asking me right now. Well, you do recognize that there is a theory of liability in Illinois under the voluntary undertaking doctrine, correct? As a general proposition, I agree. You're referring to 323 and 324, the restatement, as a general proposition. As a general proposition. I agree. Are you saying, then, where alcohol is involved in a home, then, you can never have under any circumstances a voluntary undertaking liability situation? Not if it is based upon an alcohol-related situation. The only exception that's been carved out, and Wachlich is the case that has carved that exception out. So there is an exception under Illinois law. There's an exception, Justice, when the cause of action isn't conditioned upon an alcohol-related situation. So I don't see it as necessarily an exception to the law that says there is no social host liability for alcohol-related offenses. I see that what happened at Wachlich had nothing to do, and that's what the Supreme Court said. And they made it very clear, painstakingly, by saying this exception is because it has nothing to do with an alcohol-related situation. Well, how did she get sick, then? I mean, didn't she drink alcohol that was provided by the host? She did. But the Supreme Court then was speculating she could have been sick for a lot of other reasons? The Supreme Court's rationale for allowing a 16-year-old girl in her estate to pursue an action against the two brothers was because of the very unique facts where the brothers, and certainly egregious and horrifically what they did, they took control of her, they took charge of her, exclusive charge of her. She's unconscious, she's helpless, and she's dying. And she died. And they refused anyone to give her medical attention. They refused to call 911. They refused to call the parents. They refused to take her home. That's why that is a very tight, very narrow exception to the accepted proposition that there is no social host liability in alcohol-related situations. And we don't have that here in this case. Well, that's what I was going to ask you. Yeah. Why do we not have that here? What is different about the case in front of us from WACU? Because Mr. Bell, number one, was 18 years old. Eighteen years old. And therefore? And under the Dram Shop Act, under the Illinois Responsibility Act, he is not the type of individual that has been carved out as an exception that the courts believe are going to need the protection. And you're referring to the restatement, Section 323? I am. And 324? And in addition to that, Justice, he wasn't helpless. He wasn't unconscious. He wasn't dying. And the Hussles didn't even know he was at the party. The Hussles did not grab him, take him into their complete charge, and provide any type of voluntary undertaking or voluntary services to address whatever condition he was in. That is the key distinction between Elizabeth and Wacolich and Mr. Daniel Bell. Do you have any comment on the private right of action theory in this case as well? Well, I think Wacolich addressed that. They went through a bunch of criminal statutes that are in the alcohol arena, and they did not provide. Again, this is such a uniquely carved-out exception under Illinois law, where the Illinois Supreme Court and the legislature, you know, have preempted how we're going to treat alcohol-related offenses at people's homes. And in this particular situation, just coming back to the comments you said earlier, you even noted, Justice Hudson, that the Wacolich, the father, didn't provide the alcohol to the young girl. And so that is not a condition in order to apply the prohibition against social host liability in alcohol-related offenses. I also cite the Coulter decision, the Hyde decision as well. It did not involve the defendants actually serving the alcohol. It did not involve them actually sponsoring the party. Counsel earlier said that you have to sponsor the party in order to be a social host. That is not the law under this area. And in all of those circumstances, they maintained the Charles, they put forth the logic that has been followed in Charles and Wacolich, that in this particular area, the legislature has passed the Dram Shock Act, and of course now we know there's been another act passed after Wacolich, that does not apply to Mr. Bell because he's 18 years old. So in response to the comments earlier that we need to take action, you justices need to take action here. The trend is to take action. Quite the contrary. Quite the contrary. The legislature has taken action since Wacolich, and they've passed the Illinois Alcohol Responsibility Act, and they were very narrow in its provisions, narrow enough to designate that those that it applies to are not 18 years old. At 18 years old, clearly the rationale in all of these decisions is you're old enough to vote, you're old enough to be personally accountable for your own actions, and you are not a protected class. And also the Illinois Responsibility Act does not apply, and the Dram Shock Act does not apply to an individual like Mr. Bell because he alone caused his injuries. And you cannot sue under the Dram Shock Act, you cannot sue under this Responsibility Act if you yourself are the one claiming the injuries as a result of your own intoxication. Now, in support of your argument in your brief, you cite a series of cases, Miller, Coulter, the health case, that you say indicate that while the defendant didn't actually serve or provide liquor, they were still considered social hosts and therefore exempt from liability. But if you read some of these cases closely, didn't they really each involve furnishing or providing alcohol in some way or the taking of some additional affirmative step, and therefore aren't they distinguishable from the situation here where the allegations were just a failure to prevent the consumption of alcohol? How would they be supportive? Justice, I believe that if we try to now distinguish whether or not you are a social host, if you own a home or you rent an apartment and a party takes place, with or without your knowledge, with or without your sponsoring, we are going down the road that the Charles decision and the Wachowicz decision said, we're not going to go down. And that is, you're opening up a Pandora's box of unlimited liability, and they use the term by clever plaintiff's lawyers, coming back and coming up with new causes of action, such as what you heard earlier here today, saying that there's somehow a difference between whether or not the Hutzels provide the liquor or didn't provide the liquor, such as saying that by going down in the basement that's a voluntary undertaking. This is what the Illinois Supreme Court feared if they opened up liability for social hosts where alcohol is involved. They have said, and the Second District has been on the correct side of this in Charles and other decisions, they have said this area of the law is the responsibility of the legislature. And they have spoken time and time again, and therefore we defer to them. They, the legislature, the General Assembly, has preempted this area of the law. And stare decisis will be followed. Thank you very much, counsel. Mr. Deutschman? Counsel, could you start out by addressing the point that opposing counsel raised in response to your sort of a public policy argument? He's alluded to a legislative amendment subsequent to Wackowich that seems to address this issue. Actually, it did address the issue for 16 and 17-year-olds. It doesn't address it for 18, 19, 20-year-olds. Why? I don't know. But that statute is very limited in its implication. And why it is, I can't explain. Well, does that provide support for his argument regarding an 18-year-old? Mr. Bell graduated from high school in the same year that he died. Graduated from high school. He was 18 years old. If it had been the year before, he would be covered under that statute. And we wouldn't be even here. This isn't a clever plaintiff's lawyer. This isn't smoke and mirrors. We're talking about real people that need to be held responsible for their actions. The defendants in this case knew there was a party going on. They said that they were going to make sure and monitor and inspect and do everything possible based on the history that their son had had with the parties and the criminal convictions that he had been involved in. They were not going to let this happen again. So it would be your position, then, that the voluntary undertaking theory of liability would not be contingent upon any statutory enactment in this case. Is that sort of what you're saying? That's correct. One thing has nothing to do with the other because my client is outside of being 16 or 17 years old. And the fact is, if you look at counsel's brief, he doesn't even mention the word voluntary undertaking. He mentions Wakalu's write-up, but he doesn't mention the voluntary undertaking part of that case until pages like 12, 11, 12, something way late. They don't look at this case, the Wakalu's case, the Illinois Supreme Court edict on voluntary undertaking. They don't look at this at all as anything but trying to focus you in on social host liability. Social host liability is trying to prevent a takeover of the dram shop. This is way beyond that. It has nothing to do with that, nothing to do with being a social host. And the Wakalu's case opens it up to being something other than that. They allow for an application on a voluntary undertaking situation. The fact of the matter is that under the circumstances here, there is another dead boy in the same car. He got a different judge. Judge Mullen heard the same exact motion to dismiss under 2615. The complaints mirror each other. However, she found, as other judges I'm sure have throughout the state, that there is a way that plaintiffs can fashion a complaint to reasonably state a cause of action under the voluntary undertaking if the facts meet that burden. But Judge Hall seemed to think there was a difference in their position. That is, one being a passenger and the other being a driver. Is that correct? And that's absurd. And it's unbelievable to me. The fact is, Mr. Trace and his lawyers were relying on the serving of alcohol to Danny Bell, my client. And without Mr. Bell being served alcohol, and without him getting drunk, and without the voluntary undertaking that the Hussles had in that case, the Trace case would have and should have been dismissed as well. The fact is, they relied on the same facts that we are relying on, the exact same facts. The fact that my client was driving the car is no different. They were served at that. He was served at that party. Actually, Trace never had any alcohol. It was proven that he had just smoked marijuana. My client had worked until the time he left for this party, left the job, had had nothing to drink, was given alcohol at the party by other people, by other teenagers, who brought this alcohol in, in big boxes, in front of the Hussles, who were inspecting it and allowing it to go on. Counsel said that my client, you know, that he never, Mr. Hussle never knew that my client was intoxicated. Mr. Hussle was in the basement. He was, my client was drinking in the basement. That's evidence. It's facts. And he knew that there were people drinking. He knew there was a tremendous smell of alcohol. He had talked to these people. He could tell that they were intoxicated, and he allowed them to leave despite saying he was going to monitor and inspect and prevent any kind of action like this from taking place. My client is the, his death is as a result of the increased risk of harm that was fashioned by the voluntary undertaking and the negligent performance of that by the Hussles, and we'd ask for you to reverse the opinion of Judge Hall. Thank you for your time and attention. Have a great day. Thank you. At this time, the court will take the matter under advisement and render a decision in due course. Court stands at brief recess.